UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BROWN COUNTY WATER UTILITY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-02134-TWP-TAB ) |
| TOWN OF NASHVILLE, INDIANA, CHARLES KING, JANE GORE, ALISHA JACOBA, ARTHUR OMBERG, and DAVE RUDD, | ) ) ) ) ) ) |
| Defendants. | ) |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Town of Nashville ("Nashville"), Charles King, Jane Gore, Alisha Jacoba, Arthur Omberg, and Dave Rudd (collectively, "Defendants") ([Filing No. 57](#)), and Plaintiff Brown County Water Utility, Inc. ("Brown County Water") ([Filing No. 63](#)). Also pending is Defendants' Objection to Undisclosed Expert Opinion ([Filing No. 67](#)). Brown County Water initiated this litigation alleging the Defendants are encroaching upon its water service rights, in violation of 7 USC 1926(b). Defendants filed a motion for summary judgment, contending they are entitled to judgment as a matter of law because Brown County Water is encroaching on their water service rights. Brown County Water filed a cross motion making a similar argument. For the following reasons, the Court **denies** the cross-motions for summary judgment and **overrules** the Defendants' Objection to Undisclosed Expert Opinion.

### I. BACKGROUND

This case involves the parties' dispute as to which entity is allowed under federal regulation to provide water services to a property located in Brown County, Indiana ("Brown County").

The property at issue in this case is located in Brown County in an area commonly known as Firecracker Hill. The property is east of Greasy Creek Road and Memorial Drive, south of Creamer Road, and north of Old State Road 46. In December 2016 a new customer, Big Woods Brewing Co. LLC ("Big Woods"), purchased two undeveloped parcels and began constructing a distillery, brewery, restaurant and event center on the property on Firecracker Hill. Big Woods completed construction on key phases by December 2017 and August 2018 and the restaurant and other facilities are presently open. (Filing No. 31-2 at 1–2, 6–7; Filing No. 58-4 at 2; Filing No. 64-6 at 3, 15; Filing No. 64-7 at 4; Filing No. 64-8 at 4). Big Woods requires a six-inch water main to adequately service its facilities with water. (Filing No. 5-4 at 2).

Brown County Water is a federally-indebted, rural not-for-profit corporation in the business of supplying water to customers in and surrounding Brown County, Indiana (Filing No. 49 at 1). When this lawsuit began in early 2017, Brown County Water had 5,339 customers and provided water to its customers who are located throughout most of Brown County and parts of Bartholomew County, Johnson County, Morgan County, and Monroe County (Filing No. 5-3 at 2).

The town of Nashville is an Indiana municipality located in Brown County, and individual Defendants Charles King, Jane Gore, Alisha Jacoba, Arthur Omberg, and Dave Rudd are members of the Nashville Town Council (Filing No. 49 at 2). In 1977, Nashville obtained $568,000.00 in funding from the United States Department of Agriculture to complete a project involving the construction of 75,000 feet of new distribution mains, and as part of the project, Nashville installed a six-inch water main along Old State Road 46 directly in front of the property at issue in this case (Filing No. 31-1 at 1–2; Filing No. 58-1 at 5).

In December 2010, Brown County Water financed significant improvements to its infrastructure through federal loans issued by the United States of America, acting by and through the Rural Development Agency of the United States Department of Agriculture ("USDA"). As of December 2016, Brown County Water was indebted to the USDA in the amount of $4,973,674.92 and was making monthly payments of $19,533.00. The longest term of Brown County Water's federal loans will mature in December 2050 (Filing No. 5-3 at 1–2; Filing No. 5-1 at 1–2).

On June 3, 2016, the USDA issued to Nashville a "letter of conditions" for a $1,220,000.00 federal loan for a project that included installation of an automated meter reading system, which would be used to service Nashville's water mains including the six-inch water main along Old State Road 46 (Filing No. 31-1 at 2, 18–19; Filing No. 58-3 at 2–3). The letter of conditions provided that the "loan/grant will be considered approved on the date Form RD 1940-1, 'Request for Obligation of Funds,' is signed by the approving official," (Filing No. 31-1 at 19), and the approving official signed Form RD 1940-1 on June 3, 2016 (Filing No. 70-3). The USDA had previously provided Nashville with approximately $26,625.00 in pre-planning grant funds for the project in 2016 (Filing No. 31-1 at 2, 18–20). On October 10, 2018, the USDA loaned Nashville $967,000.00 for its project (Filing No. 70-2).

Nashville annexed the Big Woods property on April 20, 2017, and passed an ordinance to establish the property as within its exclusive water service area on May 15, 2017 (Filing No. 5-8 at 2–3; Filing No. 5-12 at 2–3). Nashville then entered into a contract with Big Woods on May 18, 2017, to provide water services to the property (Filing No. 58-2 at 23–28). In July 2017, Nashville connected its six-inch water main along Old State Road 46 to the property and began providing water service to the property (Filing No. 31-2 at 2). On February 7, 2018, Nashville

received approval from the Indiana Utility Regulatory Commission ("IURC") to establish the property as within its exclusive water service area (Filing No. 58-5).

On June 20, 2017, two months after Nashville annexed the Big Woods property but shortly before the town connected its water main to the property and began providing water services, Brown County Water filed this lawsuit, alleging that its water service area included the Big Woods property, and Nashville was encroaching on its service area (Filing No. 1).

Brown County Water began providing water services to a customer adjacent to what would become the Big Woods property (the "Reichman property") beginning in February 1974. Brown County Water provided water to the Reichman property and the surrounding area through a two-inch water main. After initiating this lawsuit, Brown County Water upgraded its two-inch water main to a six-inch water main, completing the upgrade on August 10, 2017, and placing the water main into service on August 15, 2017. This existing six-inch water main runs along Greasy Creek Road and Weddle Lane and runs to the Big Woods property line through an easement on the Reichman property. The connection point is approximately 1,050 feet from Big Woods' facilities through the Big Woods property. As of September 2018, Brown County Water was serving seventy-seven customers within a half-mile radius of the Big Woods property (Filing No. 64-2 at 2–3; Filing No. 64-3 at 2–3; Filing No. 64-6 at 5, 9–10).

Brown County Water initiated this lawsuit, seeking injunctive relief and a declaratory judgment that the Big Woods property is in Brown County Water's federally-protected service area and that Nashville is prohibited from providing water service to Big Woods. After months of unsuccessful efforts to resolve their dispute, the parties filed cross-motions for summary judgment concerning their rights to provide water services to the Big Woods property.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

The parties filed cross-motions for summary judgment regarding their federally-protected water service rights, and the Defendants filed an Objection to the undisclosed opinion of expert Lori Young. The Court will first address the objection before turning to the summary judgment motions.

**A.   Defendants' Objection to Undisclosed Expert Opinion**

The Defendants filed an Objection to Undisclosed Expert Opinion, asking the Court to exclude the undisclosed opinion of Brown County Water's expert, Lori Young ("Young"), which was first provided in the summary judgment briefing. The Defendants assert that this new, undisclosed expert opinion is that Brown County Water can provide Big Woods water service

6

along a vague, unspecified route. They argue that Young did not include this opinion in her expert report, and she has not provided the Defendants with facts or data underlying the opinion.

The Defendants point out that Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires an expert's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Further, Rule 26(a)(2)(B)(ii) requires the report to contain "the facts or data considered by the witness." A failure to include this information in the expert report results in the exclusion of the expert opinion under Rule 37(c)(1).

On June 13, 2018, Brown County Water provided Young's expert report to the Defendants, and the report suggested that Brown County Water could provide water service to the Big Woods property along a path cut through undisturbed woods. On July 23, 2018, the Defendants' expert provided his report, which analyzed Young's proposed water route. The Defendants then filed their summary judgment motion and asserted arguments based upon the opinions expressed in the two expert reports.

The Defendants assert,

> On September 19, 2018, BCWU filed its summary judgment briefing. In a concession that BCWU's originally suggested route was problematic, BCWU's expert now claimed—***for the first time***—that there was already a utility corridor at some unspecified location on Big Woods' property, and that BCWU could allegedly serve Big Woods through this corridor. (Dkt. 64 p.10.) BCWU did not, however, specify the new route's location, BCWU did not provide any data or analysis to demonstrate that this route could feasibly serve BCWU, BCWU did not provide any information regarding what it would cost Big Woods to receive service using this unspecified route, and BCWU did not provide any evidence that it has the legal right (easements, access rights, etc.) to serve BCWU using this new route.

(Filing No. 67 at 5) (emphasis in original). They argue that "the Federal Rules of Civil Procedure do not permit BCWU to change its theory in the middle of this case through an undisclosed expert opinion." *Id.* at 6–7.

7

The Defendants argue that Brown County Water provided no justification for its new expert opinion and allowing the new opinion would be prejudicial to the Defendants because they spent time and money developing an expert opinion in response to the original expert opinion and filed summary judgment briefing based on the original opinion. Additionally, the underlying data and analysis supporting the new proposed water route has not been provided to the Defendants. Thus, they argue, the new expert opinion about a new water route should be excluded.

Brown County Water responds that Young's "new" expert opinion is a rebuttal declaration submitted in support of Brown County Water's cross-motion for summary judgment. The opinion is that Big Woods "could connect to Brown County Water's existing six-inch pipe through a 'previously cleared corridor' without 'clear-cutting of woods in the manner that Big Woods has already done down the hillside on the west side of their property for sanitary sewer and electrical utilities.'" ([Filing No. 69 at 1](Filing No. 69 at 1) (quoting [Filing No. 64-4 at 7](Filing No. 64-4 at 7) ¶¶ 44–45).) Brown County Water asserts that this "opinion was timely disclosed under Rule 26(a)(2)(D)(ii) in rebuttal to the Town's expert report, supported by sufficient data and analysis, and disclosed in a manner that does not prejudice the Town." *Id.*

Young's expert report was completed and produced to the Defendants during Big Woods' construction at the property. That construction continued, and Big Woods' facilities were completed and opened shortly after Young's report was produced. Brown County Water explains that Young's report suggested two hypothetical routes by which Big Woods could connect to Brown County Water's six-inch water main. These suggested routes were not definitive; rather, they were possible water routes. Then the Defendants' expert provided a response expert report in which he opined that Young's suggested route would create a visual scar from clearing a path through the undisturbed woods. The Defendants used their expert's opinion in their opening

8

summary judgment brief. In response, Brown County Water presented Young's rebuttal declaration to support its cross-motion for summary judgment. Thus, Brown County Water asserts, Young's rebuttal declaration was simply a timely response to "contradict or rebut evidence on the same subject matter identified" in the Defendants' expert report that was used in the opening summary judgment brief. *See* Rule 26(a)(2)(D)(ii).

After reviewing the expert opinions provided by the parties, the Court concludes that Young's rebuttal declaration is not an untimely, undisclosed new expert opinion. Rather, it is a permissible rebuttal opinion that responds to the Defendants' expert opinion that Brown County Water's originally-proposed water routes would leave a visual scar from clearing a path in the undisturbed woods. Young's rebuttal opinion addressed clearing the woods and a visual scar, and noted, "Brown County Water could extend the water transmission main along the west property line . . . . Big Woods could then construct their water main within or immediately adjacent to the previously cleared corridor for the utilities installed for this development." ([Filing No. 64-4 at 7](#).) Young's opinion is permissible under Rule 26(a)(2)(D)(ii).

Importantly, the Defendants were given time to develop their own rebuttal expert opinions to respond to Young's rebuttal declaration and, in fact, the Defendants did compose their own rebuttal expert opinion. The Defendants provided a supplemental affidavit from their expert witness, who specifically addressed the opinions contained in Young's rebuttal declaration ([Filing No. 70-5](#)), and the Defendants relied upon their expert's supplemental affidavit in their reply summary judgment brief. Thus, they have not been prejudiced by Young's rebuttal declaration because they have fully responded to it with their own rebuttal expert opinion. Therefore, the Court determines that exclusion of Young's rebuttal declaration is not warranted, and the Court will consider this evidence when ruling on the summary judgment motions.

## B. Brown County Water's Objection to Affidavit of Brian Bullock

As an initial matter, the Court will address Brown County Water's objection to the admissibility of the affidavit of Brian Bullock ("Bullock"), arguing that the affidavit should be excluded from consideration by the Court in ruling on the summary judgment motion. Brown County Water seeks exclusion under Federal Rule of Civil Procedure 37(c)(1) because the Defendants did not disclose Bullock as a witness in its initial disclosures or preliminary witness list, and he was not identified in any of the documents produced by the Defendants (Filing No. 64 at 15–16). Brown County Water asserts that "Bullock's declaration is the first and only representation [it] has seen indicating that all of the conditions have been met and that the Town reasonably expects closing on Nashville's federal funding of $1,220,000 to occur around October 5, 2018 and at the time of closing, Nashville will be federally indebted." *Id.* at 16 (internal punctuation omitted). Thus, Brown County Water argues, without prior disclosure, Bullock's affidavit must be excluded under Rule 37(c)(1).

The Defendants respond that on August 7, 2017, they filed the affidavit of their expert, Stephen M. DeBruler ("DeBruler"), who explained that the USDA issued the letter of conditions to Nashville for the $1,220,000.00 loan, and the letter noted that closing would occur near the end of construction (Filing No. 31-1 at 2, 18, 29). Because this was a construction project, Defendants contend they did not know when construction would be complete. They further explain,

> Originally, under the Case Management Plan, dispositive motions were due on or before August 1, 2018. (Dkt. 48 p.7.) Under that timeline, construction of the Current USDA Project would not have been complete and USDA would not have provided Nashville with funding during summary judgment briefing. As a result, Nashville did not anticipate needing an update of construction progress in its summary judgment brief, and Nashville did not include Brian Bullock, who could give such an update, on its Preliminary Witness List, which was filed on March 30, 2018. (Dkt. 50.) An update on construction progress was also not going to be necessary at trial in 2019 because Nashville expected construction to be done by then.

([Filing No. 70 at 19](#).)

The summary judgment briefing schedule was amended with the Defendants' response brief due in October 2018, and it became relevant to give the Court an update of the progress on the project's construction and the estimated closing date on the loan, which would occur during the summary judgment briefing. Defendants argue they were justified in not disclosing Bullock earlier because, under the original case management plan, his testimony was not going to be relevant during the summary judgment briefing or during trial. They contend not identifying Bullock earlier was harmless as DeBruler raised the issues about Nashville's federal debt at the beginning of the case, which is the information Brown County Water complains it did not have. Brown County Water never sought to depose DeBruler or any other individual, and Nashville has since closed on its federal loan, making Bullock's construction progress update irrelevant and the lack of disclosure harmless.

Whether the failure to timely disclose Bullock as a witness was "justified or harmless is entrusted to the broad discretion of the district court." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). And where such failure was justified or harmless, the Court need not exclude Bullock's affidavit. *See id.* at 856–57. The Court concludes that exclusion of Bullock's affidavit is not warranted in this case. The substance of the testimony that Bullock provides was also provided by DeBruler and the USDA letter of conditions earlier in the litigation. Bullock's affidavit only provided updated information on the anticipated timing of construction progress and closing on the loan when the timing of the summary judgment briefing was amended. Importantly, although Brown County Water objects to Bullock's affidavit, Brown County Water also relies on the affidavit for its argument that Nashville was not federally indebted, citing the affidavit multiple

times throughout its brief (*see* Filing No. 64 at 14, 15, 59). Therefore, the Court overrules the objection to Bullock's affidavit.

**B.     Cross-motions for Summary Judgment**

The USDA is empowered by 7 U.S.C. § 1926(a) to make or insure loans and to award grants to associations (including not-for-profit corporations and public agencies) to provide water or waste disposal facilities in rural communities. The statute at the center of the parties' dispute, 7 U.S.C. § 1926(b), provides:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan . . . .

This statute "explicitly prohibits municipal encroachment on a rural water association's service area by means of annexation." *Jennings Water, Inc. v. N. Vernon*, 895 F.2d 311, 314 (7th Cir. 1989). "[T]he provision should be given a liberal interpretation that protects rural water associations indebted to the [federal government] from municipal encroachment." *Id.* at 315.

In order to establish a violation of 7 U.S.C. § 1926(b), a plaintiff must show that: (1) it is an association within the meaning of the statute; (2) it has a qualifying outstanding loan obligation; (3) it has provided or made service available to the disputed area; and (4) a competing entity curtailed or limited service in the area to which the plaintiff was providing service or making service available. *See Jennings Water*, 895 F.2d at 318.

In this case, each party asserts that it can satisfy the requirements for Section 1926(b) protection. The Defendants argue that Brown County Water has not provided service or made service available to the Big Woods property. On the other hand, Brown County Water argues that

Nashville was not federally indebted with an outstanding loan obligation when it first encroached upon Brown County Water's service area.

In support of their position, the Defendants argue they are entitled to summary judgment, allowing Nashville to provide water services to the Big Woods property, because the property is within Nashville's "service area," it is already providing water to Big Woods, and it would be contrary to Section 1926(b) to force one federally-indebted water provider to give up a customer to another federally-indebted water provider. The town of Nashville obtained a USDA loan in 1977 to install a six-inch water main along Old State Road 46 directly in front of what is now the Big Woods property. Then on June 3, 2016, the USDA issued to Nashville a "letter of conditions" and approved another loan for the automated meter reading system, which is being used to service Nashville's water mains, including the six-inch water main providing service to Big Woods. In July 2017, Nashville connected its six-inch water main to the property and began providing water service to Big Woods. On October 10, 2018, the USDA provided Nashville with $967,000.00 for the automated meter reading project.

The Defendants rely on federal regulations implementing the USDA's rural water loan program to assert that the Big Woods property is within Nashville's service area and is protected from encroachment. "All facilities financed under the provisions of this part shall be for public use. The facilities will be installed so as to serve any potential user within the service area who desires service and can be feasibly and legally served." 7 C.F.R. § 1780.11(a). "Service area means the area reasonably expected to be served by the project." 7 C.F.R. § 1780.3. "Project means all activity that an applicant is currently undertaking to be financed in whole or part with [USDA] assistance." *Id.*

13

Nashville's USDA-funded six-inch water main was placed directly in front of the Big Woods property, and it is reasonable to expect that a water main directly in front of a property will serve that property. Big Woods desires service from Nashville, and it is feasible for Nashville to provide water service as water service is currently being provided. The automated meter reading system also is being utilized to service the Big Woods property. Therefore, the Defendants argue, the Big Woods property is within Nashville's service area and should be protected against encroachment by Brown County Water.

The Defendants further argue that the Big Woods property is not in Brown County Water's service area, and Brown County Water has not made services available to Big Woods. At the time that Brown County Water initiated this lawsuit, its six-inch water main nearest the Big Woods property was 1,745 feet away ([Filing No. 31-4 at 3](#)), and Brown County Water had to upgrade its two-inch water main to a six-inch water main after filing this lawsuit just to have an adequately-sized water main near the property. In order to connect to Brown County Water's six-inch water main after its upgrade, Big Woods would have to clear a ten to fifteen-foot-wide path through undisturbed woods at a length of approximately 1,050 feet. This would cost Big Woods approximately $124,000.00 to connect to Brown County Water's six-inch water main ([Filing No. 58-2 at 3](#)). The Defendants assert that this is not making water services available to Big Woods, and Big Woods does not fall within Brown County Water's service area because it is not reasonable to expect Big Woods to spend hundreds of thousands of dollars to connect to a water main more than a thousand feet away when it already is connected to Nashville's water main in front of the property.

The Defendants note that 7 C.F.R. § 1780.57(a) directs that federally-funded water projects should avoid or minimize adverse environmental impacts and connecting to Brown County

Water's facilities would require an adverse environmental impact, clearing undisturbed forest. Additionally, "[w]ater facilities should have sufficient capacity to provide reasonable fire protection to the extent practicable," 7 C.F.R. § 1780.57(d), and Nashville is providing fire protection water services to Big Woods, while Brown County Water cannot supply adequate water services to provide fire protection. (*See* [Filing No. 58-2 at 12](#) ("The pressure available to the sprinkler system is below the design limit.").)

In support of its request for summary judgment, Brown County Water explains that it has been providing water services to the Reichman property since 1974, and the Reichman property is directly adjacent to the Big Woods property. Brown County Water has made services available to the Big Woods property for four decades without controversy. To make service available, a water utility has to have pipes in the ground (even if the pipes are merely adjacent to the property), and it must have the capacity to service the area within a reasonable time. *Santa La Hill, Inc. v. Koch Dev. Corp.*, 2008 U.S. Dist. LEXIS 2559, at *13–14 (S.D. Ind. Jan. 11, 2008).

Brown County Water argues it was capable of meeting Big Woods' water needs when Big Woods purchased the property and began construction, and it was capable of meeting the water needs after construction was complete and the distillery, brewery, restaurant, and event center were opened. Big Woods' initial water demand was approximately 350,000 gallons per month, and once the facility was fully operational, the water need increased to approximately 1,000,000 gallons per month ([Filing No. 64-4 at 2](#)). Brown County Water asserts it could meet Big Woods' water needs during the construction phase through its then-existing two-inch water main and could meet the increased water demand through the upgraded six-inch water main that was installed and extended to the property line by August 2017 ([Filing No. 64-6 at 5](#)–6, 9). Therefore, Brown County Water asserts, the Big Woods property is in its service area and it made services available

15

because it was providing water to an immediately adjacent property and was able to provide adequate water service to the property.

Brown County Water argues that Section 1926(b) asks only whether the federally-indebted water association has been providing water or has made water services available. The statute does not require a water association to provide fire protection services, and the statute does not take into account the water user's cost to connect to the water association's facilities. The statute also does not require a water association to avoid all environmental impacts, and the property can be environmentally and aesthetically remediated after installing a new pipe. Thus, Brown County Water asserts, the Defendants' arguments along these lines are irrelevant.

As to federal indebtedness, Brown County Water received a loan from the USDA in 2010. The longest term of Brown County Water's federal loans will mature in December 2050. Brown County Water makes payments to the USDA in the amount of $19,533.00 per month ([Filing No. 5-3 at 1](#)–2; [Filing No. 5-1 at 1](#)–2). Thus, Brown County Water points out, it is currently federally-indebted for purposes of Section 1926(b). Brown County Water asserts that, conversely, Nashville was not federally indebted for purposes of Section 1926(b) when this litigation began and throughout much of the course of the litigation. Brown County Water explains that Nashville's federal loan matured annually over a period ending January 1, 2017, and Nashville's new loan did not close until October 2018 ([Filing No. 58-1 at 5](#), 9; [Filing No. 58-3 at 4](#)). Brown County Water argues that the protections of Section 1926(b) exist for the benefit of currently-indebted associations and their outstanding loans, not for the benefit of former or soon-to-be federal debtors. The protections apply only during the term of the loan, and a loan application is not the same thing as a loan; the protections do not apply until there is actual indebtedness. Thus, Brown County Water contends, Nashville is not entitled to Section 1926(b) protection.

The parties' material disputes regarding whether Nashville was federally indebted and whether Brown County Water made water services available with an adequate water supply preclude entry of summary judgment to either party. Nashville received a federal loan to install the six-inch water main in front of the property in 1977. This loan matured annually over a period ending January 1, 2017. Prior to that date, the USDA approved a new loan for Nashville's new water project on June 3, 2016, and at that point, the USDA already had provided grant funds to Nashville for the new project. Then on October 10, 2018, the USDA loaned Nashville $967,000.00 for the project. The implementing regulations seem to suggest there may be some protection for a water association that is working on a project to be financed by the USDA under an approved loan. *See* 7 C.F.R. § 1780.3 ("Service area means the area reasonably expected to be served by the project." "Project means all activity that an applicant is currently undertaking to be financed in whole or part with [USDA] assistance."). However, the parties argue over Nashville's status as a federal debtor based on the timing of these financial events.

Brown County Water provided water service to the Reichman property using a two-inch main beginning in 1974. Nashville installed its six-inch main in front of the Big Woods property in 1977. In May 2017, Nashville contracted with Big Woods to provide water services and began providing water to the property in July 2017. On June 20, 2017, Brown County Water filed this lawsuit, and then in August 2017, Brown County Water upgraded its two-inch main to a six-inch main and extended it to the property line. Again, the parties argue over whether Brown County Water made services available based on available water pressure, possible routes to connect to Brown County Water's six-inch main, and the timing and location of available water mains.

These issues raise mixed questions of law and fact that cannot be conclusively decided in only one direction. "[A] mixed question of law and fact . . . may be resolved on summary judgment

if a reasonable trier of fact could reach only one conclusion -- but not otherwise." *Ty, Inc. v. Publ'ns Int'l*, 292 F.3d 512, 516 (7th Cir. 2002) (internal citations and quotation marks omitted). The parties have raised disputes that preclude resolution of this case at the summary judgment stage.[1] Because the Court denies the parties' cross-motions for summary judgment, it also denies the parties' requests for fees and costs and an injunction at the summary judgment stage.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' Motion for Summary Judgment ([Filing No. 57](#)), **DENIES** Brown County Water's Cross-Motion for Summary Judgment ([Filing No. 63](#)), and **OVERRULES** the Defendants' Objection to Undisclosed Expert Opinion ([Filing No. 67](#)).

**SO ORDERED.**

Date: 5/15/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[1] The Court recognizes that the parties have presented additional arguments and facts concerning tax abatements, TIFs, annexation, conflicting proposed service area maps, the IURC order under state law, ongoing maintenance of pipes, and Big Woods' preferences. However, the Court determines that these other matters do not concern the dispositive issues to resolve the summary judgment motions, which are whether Brown County Water made water services available to the property and whether Nashville was federally indebted. Therefore, the Court declines to discuss at length these other arguments and facts presented by the parties.

DISTRIBUTION:

Harmony A. Mappes
FAEGRE BAKER DANIELS LLP
harmony.mappes@faegrebd.com

Jason Rauch
FAEGRE BAKER DANIELS LLP
jason.rauch@faegrebd.com

Peter Campbell King
CLINE KING & KING PC
pck@lawdogs.org

Bradley M. Dick
BOSE MCKINNEY & EVANS, LLP
bdick@boselaw.com

J. Christopher Janak
BOSE MCKINNEY & EVANS, LLP
jjanak@boselaw.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
pvink@boselaw.com